RICARDO R. RODRÍGUEZ DEL VALLE, demandante y recurrido, *v.* LYDIA CORCELLES ORTIZ, demandada.

*Número:* CE-94-55 *Resuelto:* 3 de mayo de 1994

*Pedro A. Delgado Hernández, Procurador General,* y *Aida Ileana Oquendo Graulau, Procuradora General Auxiliar,* abogadas de El Pueblo, en calidad de *Parens Patriae; Elba Rivera de Báez,* abogada del demandante y recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El peticionario Departamento de Justicia de Puerto Rico, representado por el Procurador General, comparece ante este Tribunal "en virtud de la facultad que le otorga el Artículo 3 de la Ley Número 22 del 22 de abril de 1988 que adopta la Carta de Derechos de las Víctimas y Testigos de Delito en armonía con la política del Estado Libre Asociado de Puerto Rico de proveer protección y asistencia a las víctimas y testigos en los procesos judiciales e investigaciones que se realicen por el Estado". Petición de *certiorari,* pág. 2.

Nos informa el Procurador, en el recurso que radicara, que el "presente caso está revestido del más alto interés público y plantea una importante cuestión de derecho que no ha sido interpretada aún por este Honorable Tribunal". Petición de *certiorari,* pág. 2. Reclama el Departamento de Justicia, al amparo de la facultad que le concede la Ley Núm. 22 de 22 de abril de 1988 (25 L.P.R.A. secs. 973–973c), "la paralización de un descubrimiento de prueba [ordenado por el tribunal de instancia en un caso civil entre dos partes privadas] en violación del derecho garantizado a toda víctima de delito bajo el Artículo 2, in-

ciso (c), de la referida Ley Núm. 22,(¹) de que se mantendrá la confidencialidad de la comunicación habida entre la víctima y su consejero garantizada por la Regla 26-A de Evidencia". Íd., pág. 3.

# I

Lydia Corcelles Ortiz y Ricardo R. Rodríguez Del Valle procrearon, durante su matrimonio, a la menor L.C.R.C. Al divorciarse por la causal de trato cruel, el 14 de noviembre de 1990, la referida menor contaba un (1) año de edad, concediéndole la Sala de San Juan del Tribunal Superior de Puerto Rico la patria potestad y custodia a la madre. Las relaciones paterno-filiales, las cuales fueron un tanto azarosas al comienzo debido a disputas entre las partes, se normalizaron y así transcurrieron hasta comienzos de 1993.

A finales de enero de 1993, la señora Corcelles Ortiz acudió al Programa Biosicosocial del Hospital Pediátrico Universitario del Recinto de Ciencias Médicas en busca de ayuda;(²) ello con motivo de una alegación, por parte de la niñita, de que un medio hermano y su padre, alegadamente, la "habían tocado" en sus partes íntimas. Dicha oficina la orientó para que acudiera a la Sala de Emergencias del Hospital Pediátrico por razón de que ellos sólo podían recibir referidos a través de la misma. Así lo hizo la señora

---

(¹) La Carta de Derechos de las Víctimas y Testigos de Delito, en su inciso (c), dispone que toda persona que sea víctima de delito en el Estado Libre Asociado de Puerto Rico *tendrá derecho a*:

"*Reclamar* que se mantenga la confidencialidad de la información sobre su dirección y números telefónicos cuando así lo estime necesario para su seguridad personal y de sus familiares *así como el privilegio de la conversación habida entre la víctima y su consejero que garantiza la Regla 26-A de Evidencia*, Ap. IV del Título 32." (Énfasis suplido.) 25 L.P.R.A. sec. 973a(c).

(²) Programa interdisciplinario especializado en maltrato, abuso y/o negligencia contra menores —creado en virtud de la Ley Núm. 77 de 9 de julio de 1986, conocida como Ley para Protección de Testigos y Víctimas (25 L.P.R.A. secs. 972–972j)— que recibe fondos federales administrados por el Departamento de Justicia a través de su División para la Protección y Asistencia de Víctimas y Testigos.

Corcelles Ortiz, refiriéndola la Sala de Emergencias del referido hospital al Programa Biosicosocial.

El 4 de febrero de 1994, la señora Corcelles Ortiz radicó, por derecho propio, una moción ante la Sala de San Juan del Tribunal Superior en solicitud de paralización de las relaciones paterno-filiales, la cual fue declarada con lugar ese mismo día, ex parte, por dicho foro judicial, siendo notificada de la misma el señor Rodríguez Del Valle. Simultáneamente, el Ministerio Fiscal comenzó una investigación de los alegados hechos constitutivos de abuso sexual, la cual —adelantamos— culminó en la radicación de cargos criminales contra Rodríguez Del Valle, y determinación de causa probable para arresto, por el delito de actos lascivos e impúdicos; cargos aún pendientes de ulterior trámite.

Mientras tanto, *en el ámbito civil*, Rodríguez Del Valle comenzó —en relación con la orden emitida de paralización de relaciones paterno-filiales— el proceso de descubrimiento de prueba, logrando que el tribunal de instancia ordenara la evaluación, por un perito psicólogo, tanto de su ex esposa como de su pequeña hija. Como consecuencia de unas diferencias y contratiempos surgidos, lo que causó que la menor no fuera evaluada por el perito de Rodríguez Del Valle, el tribunal de instancia celebró varias vistas con el propósito de romper el impase surgido. *Ello culminó en la orden —emitida en "corte abierta" el 18 de enero de 1994— que hoy revisamos a petición del Departamento de Justicia.* Mediante la misma, el foro de instancia le ordenó al custodio de los récord del Programa Biosicosocial del Hospital Pediátrico a poner a disposición de Rodríguez Del Valle, su representación legal y su perito psicólogo *todos* los récord en su poder relativos a la menor en controversia; orden que tuvo el efecto de declarar, *sub silentio*, sin lugar una solicitud de "orden protectora" que ante dicho foro radicara la División de Litigios Generales del Departamento de Justicia mediante la cual se invocó el privilegio que es-

tablece, para las víctimas de delito, la Regla 26-A de Evidencia, 32 L.P.R.A. Ap. IV. En dicho día, debe señalarse, el tribunal de instancia adicionalmente denegó una solicitud, *de los abogados de la madre de la niña*, para que se designara a la Procuradora de Menores como defensora judicial de los intereses de la referida menor.

Inconforme, acudió el Procurador General de Puerto Rico —vía *certiorari*— ante este Tribunal en revisión de la referida actuación, imputándole al foro de instancia haber errado

> ... al ordenar el descubrimiento de prueba sobre materia confidencial, cubierta bajo el privilegio víctima-consejero consagrado en la Regla 26-A de las Reglas de Evidencia"[, y]
> ... al denegar la solicitud de que se designara a la menor L.C.R.C. un defensor judicial en representación de sus intereses. Petición de *certiorari*, pág. 9.

Mediante Resolución de 28 de enero de 1994, le concedimos término a Ricardo R. Rodríguez Del Valle para que mostrara causa

> ... por la cual este Tribunal no deba expedir el auto solicitado y dictar Sentencia revocatoria de la resolución emitida por el Tribunal Superior de Puerto Rico, Sala de San Juan, de fecha 18 de enero de 1994.

Debe, en adición, señalarse que en esa misma fecha este Foro, en auxilio de su jurisdicción, adicionalmente ordenó "la paralización de los procedimientos a nivel de instancia, hasta que otra cosa disponga este Tribunal". Resolución de 28 de enero de 1994. La parte recurrida ha comparecido en cumplimiento de la mencionada orden de mostrar causa.

En su comparecencia, la parte recurrida sostiene, en primer lugar, que el Departamento de Justicia *no* tiene facultad en ley para comparecer ante este Tribunal en revisión de una orden emitida por el tribunal de instancia en un pleito civil de relaciones de familia entre dos (2) partes privadas. Por otro lado, sostiene que la madre de la menor nunca se ha opuesto al descubrimiento solicitado por la

parte recurrida y que, de hecho, firmó una autorización por escrito a esos efectos, en corte abierta, el 18 de enero de 1994; autorización que, conforme alega la parte recurrida, es enteramente válida en vista del hecho de que la menor está sujeta a la patria potestad de su madre. *Resolvemos.*

I

Mediante las disposiciones de la antes citada Ley Núm. 22 de 22 de abril de 1988 se adoptó en Puerto Rico la Carta de Derechos de las Víctimas y Testigos de Delito. En su *Art. 2 (25 L.P.R.A. sec. 973a) la Ley Núm. 22 enumera, o establece, una serie de "derechos" que tendrá toda* "persona que sea víctima o testigo de delito en el Estado Libre Asociado de Puerto Rico...". Es de notar que entre *los derechos* que, en el antes mencionado Art. 2 de la Ley Núm. 22 de 1988, se le conceden a las víctimas o testigos de delito en nuestra jurisdicción *precisamente* se encuentra el de reclamar "que se mantenga la confidencialidad de la información sobre su dirección y números telefónicos cuando así lo estime necesario [la víctima o testigo de delito] para su seguridad personal y de sus familiares *así como el privilegio de la comunicación habida entre la víctima y su consejero que garantiza la Regla 26-A de Evidencia, Ap. IV del Título 32"* (énfasis suplido); derecho que, *precisamente*, es el que el Departamento de Justicia de Puerto Rico *vehementemente* ha reclamado, y pretendido proteger, *tanto ante el foro de instancia como ante este Tribunal*, en beneficio de esta niña de tierna edad que, alegadamente, ha sido víctima del delito de actos lascivos e impúdicos.

Por otro lado, tenemos que el *Art. 3* de la antes citada Ley Núm. 22 establece, *en lo pertinente*, que:

Toda persona que ostente un derecho de los reconocidos [en la Ley Núm. 22 de 1988] podrá por sí, por su tutor o por medio de un funcionario público o persona particular interesada en su

bienestar acudir al Departamento de Justicia o a cualquier otro foro administrativo o sala del Tribunal de Primera Instancia del distrito judicial donde resida para reclamar cualquier derecho o beneficio que le corresponda o para solicitar que se suspenda una actuación en violación a las disposiciones de las mismas.

*El Departamento de Justicia o el foro administrativo competente al cual acuda la persona recibirá e investigará estas querellas y tramitará las acciones judiciales que procedan.*

En caso de que la querella impute a un funcionario público *o persona privada* la violación de los derechos reconocidos por las secs. 973 a 973c de este título, *el Departamento podrá acudir ante los foros y autoridades competentes para que se tomen las medidas administrativas y acciones que correspondan.*

. . . . . . . .

Los tribunales concederán prioridad a las acciones iniciadas en virtud de las secs. 973 a 973c de este título y tendrán facultad para nombrar a la víctima o testigo de delito o sus familiares, representación legal o un defensor judicial cuando éstos no cuenten con recursos económicos. El tribunal tendrá facultad para dictar cualquier orden o sentencia conforme a derecho y que sea necesaria para llevar a cabo las disposiciones de las secs. 973 a 973c de este título. El incumplimiento de las órdenes y sentencias dictadas por el tribunal en virtud de esta sección constituirá desacato civil. (Énfasis suplido.) 25 L.P.R.A. sec. 973b.

■ Como podemos notar, la referida legislación expresamente le concede al Departamento de Justicia la facultad para comparecer, *en representación de las víctimas de delito*, ante los *foros correspondientes* con el propósito de que se tomen las medidas necesarias y pertinentes, y las acciones judiciales que procedan, en protección de *los derechos* que la propia Ley Núm. 22, *supra*, le concede a las víctimas y testigos de delito en nuestra jurisdicción; *entre los que se encuentran, repetimos, el derecho a que se mantenga la confidencialidad del* "privilegio de la comunicación habida entre la víctima y su consejero que garantiza la Regla 26-A de Evidencia, Ap. IV del Título 32". 25 L.P.R.A. sec. 973a.

■ La mencionada Regla 26-A fue incorporada a las Reglas de Evidencia mediante la Ley Núm. 30 de 19 de

junio de 1987 (32 L.P.R.A. Ap. IV). Como correctamente señala el Procurador General en el recurso que ante este Tribunal radicara en el presente caso, la "Exposición de Motivos" de la mencionada Ley Núm. 30 recoge el sentir del legislador al elevar, *a rango de privilegio*, la comunicación entre la víctima de delito y su "consejero profesional". Expresó la Asamblea Legislativa:

> *El daño emocional causado a la víctima de delito es generalmente mayor que el daño físico sufrido.* Los servicios de consejería son por lo general, la forma en que las víctimas y su familia pueden sobrellevar el trauma psicológico que dichas experiencias suelen causar. *Durante el proceso de consejería se discuten abiertamente las reacciones y sentimientos de la víctima sobre el crimen cometido contra ésta.* Dichas reacciones y sentimientos están muy relacionados con sus historias personales y su perfil psicológico. *Por ello, la consejería a las víctimas de delito y sus familias es más exitosa, cuando las víctimas están seguras de que sus pensamientos y sentimientos se mantendrán en confidencia y no se divulgarán sin su permiso.*
>
> Por lo tanto, por ser *política pública* del Estado Libre Asociado el mantener y fomentar la salud física y mental de la ciudadanía y proveer protección y asistencia a las víctimas y testigos de delito en los procesos judiciales *se establece el privilegio sobre la confidencialidad de la comunicación entre la víctima de delito y su consejero y se declara que la misma es inmune a cualquier descubrimiento de prueba que sea parte de un proceso legal.* (Énfasis suplido.) 1987 Leyes de Puerto Rico 107–108.

Conforme a ese propósito legislativo, la citada Regla 26-A de Evidencia establece que:

> (A) Según usadas en esta regla, las siguientes expresiones tendrán el significado que a continuación se indica:
> (1) *Comunicación confidencial*—cualquier comunicación habida entre la víctima de delito y su consejero, ya fuere en privado o ante un tercero cuya presencia es necesaria para que se establezca comunicación entre la víctima y el consejero o para facilitar los servicios de consejería que necesita la víctima, cuando tal información se divulga durante el curso del tratamiento que ofrece el consejero para atender una condición emocional o psicológica de la víctima producida por la comisión del

delito y que se hace bajo la confianza de que ésta no será divulgada a terceras personas.

(2) *Víctima*—persona que ha sufrido daño emocional o psicológico como consecuencia de la comisión de un delito que acude a un consejero o a un centro de ayuda y consejería para obtener asistencia o tratamiento.

(3) *Consejería*—la asistencia, el diagnóstico o tratamiento ofrecido a la víctima para aliviar los efectos adversos, emocionales o psicológicos causados a consecuencia de la comisión del delito. Incluye, pero no está limitada a, tratamiento en período de crisis emocional o mental.

(4) *Centro de ayuda y consejería*—cualquier persona o entidad privada o gubernamental que tiene como uno de sus principales propósitos ofrecer tratamiento y ayuda a las víctimas de delito.

(5) *Consejero*—toda persona autorizada, certificada o licenciada debidamente por el Estado Libre Asociado de Puerto Rico a realizar funciones de consejero, orientador, consultor o terapeuta o cualquier empleado o voluntario supervisado de un centro de ayuda y consejería que brinde tratamiento y ayuda a víctimas de delito.

(B) *Sujeto a lo dispuesto en esta regla, toda víctima de delito, sea o no parte en el pleito o acción, tiene el privilegio de rehusar revelar y de impedir que otro revele una comunicación confidencial entre la víctima y el consejero, si cualquiera de ellos razonablemente creía* [sic] *que la comunicación era necesaria para el tratamiento y la ayuda requerida. El privilegio puede ser invocado no sólo por su poseedor, sino también por una persona autorizada por la víctima, un representante legal o por el consejero a quien se hizo la comunicación.*

(C) Sujeto a lo dispuesto en esta regla ni el consejero ni la víctima, sean o no parte en el pleito o acción, podrán ser requeridos para que informen el nombre, dirección, localización o número telefónico de una casa de auxilio, refugio u otra facilidad que brinde refugio temporero a víctimas de delito, a menos que la facilidad en cuestión sea parte en la acción.

(D) *El hecho de que una víctima testifique en el tribunal acerca del delito no constituye una renuncia del privilegio.*

(1) No obstante lo anterior si como parte de este testimonio la víctima revela parte de la comunicación confidencial *se entenderá que renuncia al privilegio en cuanto a esa parte del testimonio solamente.*

(2) *Cualquier renuncia al privilegio se extenderá únicamente a aquello que sea necesario para responder a las preguntas que formule el abogado concernientes a la comunicación con-*

*fidencial y que sean relevantes a los hechos y circunstancias del caso.*

(E) *La víctima no podrá renunciar al privilegio por medio de su abogado.* No obstante lo anterior, si la víctima insta acción por impericia profesional contra el consejero o contra el centro de ayuda y consejería en el cual el consejero está empleado o sirve como voluntario supervisado, dicho consejero podrá declarar sin sujeción al privilegio y no será responsable por tal declaración. (Énfasis suplido y en el original.)

Conforme *expresamente* surge del inciso (B) de la transcrita Regla 26-A de Evidencia, el "privilegio de confidencialidad" que se le concede a la víctima de delito no sólo puede ser invocado por ésta sino que, también, por una persona autorizada por ella, por el consejero a quien se le hizo la comunicación o por su representante legal. En el caso de autos, la poseedora del privilegio lo es una niña de tierna edad. Somos del criterio que el Estado, *en el presente caso*, podía comparecer y reclamar dicho privilegio ante el foro judicial en representación, *cuando menos*, de los intereses de la menor y de sus propios intereses.

 De los hechos del caso surge que se radicó, ante funcionarios del Departamento de Justicia, una querella sobre la supuesta comisión de un delito de actos lascivos e impúdicos por parte del recurrido Rodríguez Del Valle en la persona de su hija menor de edad. Al emitirse por el tribunal de instancia en el pleito civil la orden sobre descubrimiento que hoy revisamos, estaba en proceso, y pendiente de resolución, la acción criminal contra el recurrido. *Dicha orden, no hay duda, podía afectar o perjudicar los intereses del Estado en el caso criminal.* En adición a ello, en el presente caso está envuelto el bienestar de un menor de edad, en relación con los cuales el Estado tiene el poder inherente de *parens patriae. Martínez v. Ramírez Tió*, 133 D.P.R. 219 (1993); *Sterzinger v. Ramírez*, 116 D.P.R. 762 (1985); *Nudelman v. Ferrer Bolívar*, 107 D.P.R. 495 (1978); *Concepción v. Concepción*, 105 D.P.R. 929 (1977); *Rodrí-*

*guez v. Gerena*, 75 D.P.R. 900 (1954); *Chardón v. Corte*, 45 D.P.R. 621 (1933).

■ Es correcto que en *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982), el Tribunal Supremo de Estados Unidos resolvió que para que el Estado posea legitimación activa, bajo el ejercicio del poder de *parens patriae*, éste debe alegar un daño a un "interés cuasi-soberano", consistiendo el mismo de una serie de intereses que tiene el Estado sobre el bienestar físico y económico de sus ciudadanos. Esto es, el poder de *parens patriae* no puede ser invocado, *de ordinario*, en representación de los intereses de un ciudadano particular que, por alguna razón, no puede representarse a sí mismo.

■ Ahora bien, nuestra jurisprudencia ha sido consistente en sostener que los casos de menores, donde está involucrado el bienestar de éstos, están revestidos del más alto interés público. *Pueblo en interés menores R.P.S. et al.*, 134 D.P.R. 123 (1993). Como correctamente señala el Procurador General en la réplica que radicara,

> ... los derechos que el Estado intenta proteger en favor de la menor L.C.R.C., no constituyen un mero interés privado o individual, sino un interés cuasi-soberano encaminado a proteger la salud emocional y el bienestar general de sus ciudadanos, y en particular de una menor de edad. *No debe caerse en la superficialidad de que tratándose de una sola niña, no exista un interés general que proteger; en la medida en que se perjudica o beneficia a uno, se perjudica o beneficia a los demás.* (Énfasis suplido.) Réplica a oposición de 21 de marzo de 1994, pág. 6.

■ Dicho de otra forma —y en relación con el requisito del "daño a un interés cuasi soberano"— somos del criterio que difícilmente existe un interés estatal más apremiante que el de proteger la seguridad de los ciudadanos de este País mediante el procesamiento, correcto y adecuado, de las personas acusadas de cometer delito en detrimento de la tranquilidad y sosiego de nuestra sociedad; en especial, en una acción criminal en la cual la alegada víc-

tima es un menor de edad. No albergamos duda, en consecuencia, de que el Estado efectivamente tiene legitimación o facultad para comparecer en el presente caso; ello no sólo en defensa de los intereses y bienestar, en particular, de una niña menor de edad, y del bienestar de la niñez y juventud puertorriqueña en general, sino que también en protección de su propio interés, esto es de que el pleito criminal no se vea adversamente afectado por un descubrimiento, a destiempo, de prueba que también forma parte del sumario fiscal, el cual es secreto.

▄▄▄ Como es sabido, las Reglas 21.1 y 21.2 de Procedimiento Civil de 1979 establecen que cualquier persona tendrá derecho a intervenir en un pleito:

> ... (a) cuando por ley o por estas reglas se le confiere un derecho incondicional a intervenir; o (b) *cuando el solicitante reclame algún derecho o interés en la propiedad o asunto objeto del litigio que pudiere de hecho quedar afectado, con la disposición final del pleito.* (Énfasis suplido.) 32 L.P.R.A. Ap. III, R. 21.1.
>
> Mediante oportuna solicitud ... (b) cuando la reclamación o defensa del solicitante y el pleito principal *tuvieren en común* una cuestión de hecho o de derecho. (Énfasis suplido.) 32 L.P.R.A. Ap. III, R. 21.2.

Somos del criterio que resulta ser evidente que el Estado, en el presente caso, cumple con los requisitos que establecen las citadas disposiciones reglamentarias para la intervención de terceros que no han sido nombrados como partes en un pleito; esto es, el Estado ciertamente tiene un "derecho o interés" en el "asunto objeto del litigio que pudiere de hecho quedar afectado" (32 L.P.R.A. Ap. III) y/o entre el pleito civil y el criminal hay una cuestión común de hecho y de derecho.

▄▄▄ *Resolvemos*, en resumen, que de una *interpretación integral* de las disposiciones de los Arts. 2 y 3 de la citada Ley Núm. 22 de 22 de abril de 1988, de la Regla 26-A de Evidencia y de la Regla 21 de Procedimiento Civil,

ante, resulta meridianamente claro que el Estado —una vez apercibido del hecho de que está en riesgo uno de los derechos que garantiza la "Carta de Derechos de las Víctimas y Testigos de Delito"— posee capacidad legal para comparecer ante el foro judicial e intervenir en un procedimiento civil en el que están envueltos derechos de una víctima de delito que están garantizados por la referida Carta de Derechos; *ello con el propósito de proteger el propio interés del Estado en la acción criminal pendiente y salvaguardar el derecho de la sociedad puertorriqueña a que los ciudadanos que delinquen sean procesados criminalmente conforme a derecho.* Además, en el presente caso existen razones adicionales para permitirle al Estado invocar este privilegio; ello en vista de que la víctima de delito es un menor de edad, en relación con el cual el Estado tiene el poder de *parens patriae* y la *obligación de velar* por el bienestar general de la niñez de nuestro País.

## II

Resuelto lo anterior, consideramos los méritos de la solicitud del Departamento de Justicia de Puerto Rico. No hay que extenderse mucho para concluir que le asiste la razón al Estado en su planteamiento. La *Regla 23.1* de Procedimiento Civil de 1979 (32 L.P.R.A. Ap. III), *en su inciso (a)*, establece, de manera inequívoca y en lo pertinente, que en un pleito civil las partes "podrán hacer descubrimiento sobre cualquier materia, *no privilegiada*, que sea pertinente al asunto en controversia en el pleito pendiente ...". (Énfasis suplido.)

De lo expuesto, resulta *meridianamente claro* que el tribunal de instancia *erró* al ordenarle al custodio de los récord del Programa Biosicosocial del Hospital Pediátrico a poner a disposición del recurrido Rodríguez Del Valle, su representación legal y/o su perito psicólogo *todos* los récord en poder de dicho custodio relativos a la menor L.C.R.C.

*Por mandato expreso de la Regla 26-A, inciso (B), de Evidencia y de la Regla 23.1, inciso (a), de Procedimiento Civil, ante, la parte recurrida no tiene derecho a obtener información alguna respecto a cualquier comunicación habida entre la menor L.C.R.C. y los consejeros del Programa Biosicosocial del Hospital Pediátrico, como tampoco a récord alguno referente a dichas comunicaciones, por razón de que dicha materia es una privilegiada y el privilegio ha sido invocado por una parte con facultad para ello*; incluyendo, dicha prohibición, las notas o escritos que dichos consejeros hayan hecho como consecuencia de las referidas comunicaciones. La parte recurrida, como ya así lo ha reconocido el tribunal de instancia, no queda indefensa ya que puede solicitar que la menor sea examinada por sus propios peritos.

Disponemos, en adición, que el tribunal de instancia, al recibo del mandato, deberá de inmediato proceder al nombramiento de un "defensor judicial" para la menor L.C.R.C.([3]) No hay duda que los hechos particulares del presente caso así lo hacen aconsejable y mandatorio.([4]) De hecho, la representación legal de la parte recurrida así lo reconoce, *y se allana*, en la comparecencia para mostrar causa.([5])

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Alonso Alonso concurrió con el resultado sin opinión escrita. El Juez Asociado Señor Fus-

---

([3]) El defensor, naturalmente, podrá hacer ante el foro de instancia los planteamientos que, en beneficio de su representada, entienda procedentes y pertinentes.

([4]) Debe mantenerse presente que, conforme la alegación de la menor L.C.R.C., ella ha sido víctima del delito de actos lascivos e impúdicos no sólo de parte de su padre biológico, sino que de un hermano de madre.

([5]) Posición, naturalmente, que dispone de su argumento de que tenía derecho a los récord que hoy denegamos por el fundamento de que la madre de la menor había consentido a ello.

Resulta, como señala el Procurador General, un contrasentido "reconocer, por un lado, el grave conflicto de interés y la necesidad de nombrar a la menor un defensor judicial que represente sus intereses y por otro lado, tratar de sostener la validez de la renuncia del privilegio hecha por la madre en nombre de la menor". Réplica a oposición de 21 de marzo de 1994, pág. 15.

ter Berlingeri emitió una opinión disidente. El Juez Asociado Señor Negrón García se inhibió.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Aunque estoy conforme con el dictamen de la mayoría de que en este caso debe procederse de inmediato al nombramiento de un defensor judicial para la menor L.C.R.C., no estoy de acuerdo con los otros pronunciamientos en su opinión.

A mi modo de ver, la mayoría reconoce una ominosa nueva facultad al Ministerio Público y lo hace con arreglo a una errada interpretación de la legislación en cuestión.

La mayoría interpreta en su opinión el supuesto alcance del Art. 3 de la Ley Núm. 22 de 22 de abril de 1988 (25 L.P.R.A. sec. 973b) y de la Regla 26-A de Evidencia, 32 L.P.R.A. Ap. IV, para resolver que el Departamento de Justicia puede intervenir *por su cuenta* en un procedimiento civil entre dos partes privadas para impedir que una de las partes pueda realizar determinado descubrimiento de prueba y así proteger los intereses del Estado en el caso criminal, que el Ministerio Público ha instado contra esa parte por hechos relacionados a los que se dilucidan en el procedimiento civil. En su interpretación, sin embargo, la mayoría hace caso omiso a las disposiciones claras y expresas, en la legislación aludida, que *limitan* o *condicionan* la facultad que la mayoría le reconoce ahora irrestrictamente al Departamento de Justicia. Así, pues, la Regla 26-A(B) de Evidencia, 32 L.P.R.A. Ap. IV, dispone que el privilegio de impedir que se revele una comunicación oficial entre una víctima de delito y su consejero, puede ser invocado: (1) por la víctima; (2) por su representante legal; (3) por una persona autorizada por la víctima, o (4) por el consejero. *En*

*ningún lugar se autoriza al Departamento de Justicia como tal a invocar tal privilegio.* Sólo podría hacerlo si la víctima lo hubiese autorizado, cosa que no sucedió en este caso. Por el contrario, la parte que en este caso podía impedir que se revelara la comunicación en cuestión, autorizó la misma, y el Departamento de Justicia pretende impedir tal revelación aun en contra de esa autorización.

Por otro lado, el Art. 3 de la referida Ley Núm. 22, *supra,* autoriza al Departamento de Justicia a instar acciones como la que está en cuestión aquí, *siempre y cuando ello se le haya solicitado por el titular del privilegio, por su tutor u otra persona con interés particular en el asunto*, cosa que tampoco sucedió aquí. De nuevo, debe recordarse que la parte con derecho a acudir al Departamento de Justicia en estos casos no sólo no lo hizo, sino que, además, autorizó el descubrimiento que el Departamento quiere impedir con su intervención.

En otras palabras, la legislación pertinente crea un rol para el Departamento de Justicia *subordinado* a la voluntad del beneficiario del privilegio, pero la mayoría en este caso, por puro fíat judicial, le otorga un rol *preferente e independiente*, que ha de ejercitarse aun por encima de lo autorizado por el beneficiario del privilegio. La mayoría ejerce una autoridad que no le corresponde al sustituir crasamente su juicio por el del legislador; de paso, le otorga al Ministerio Público una inusitada "ventaja" respecto al sumario fiscal, que atenta contra los derechos de los acusados. Este caso ciertamente trata con una alegada conducta criminal, que de haber ocurrido como se imputa, merece nuestra más fuerte condena, por ser repugnante y oprobiosa. Pero ello no justifica sentar un precedente que también regirá casos futuros, en los cuales las circunstancias puedan ser distintas.

Para justificar esta dislocación del mandato legislativo y del esquema de los derechos del acusado, la mayoría invoca

otra interpretación distorsionada del poder de *parens patriae*, aduciendo que en este caso hay un "interés cuasi-soberano". Bajo tal desatinada hipótesis, si en este caso hay un interés cuasi soberano, lo habrá en casi cualquier otro caso imaginable, lo que reduce la limitación constitucional aludida a una sin sentido.

Como yo no estoy dispuesto a interpretar las leyes y doctrinas tan arbitrariamente, DISIENTO.